IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA



Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 1:14CR164 |
| | ) | |
| v. | ) | Count One: 18 U.S.C. § 371 |
| | ) | (Conspiracy to Commit Immigration |
| MAHMOOD AHMAD, | ) | & Naturalization Fraud) |
| | ) | |
| Defendant. | ) | Count Two: 18 U.S.C. § 1425(a) (Attempted |
| | ) | Naturalization Fraud) |
| | ) | |
| | ) | Counts Three & Four: 18 U.S.C. § 1546(a) |
| | ) | (Immigration Fraud) |

INDICTMENT

May 2014 TERM- at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

General Allegations

At all times material to this indictment:

1.  The defendant, MAHMOOD AHMAD, a native and citizen of the Islamic Republic of Pakistan, is married with two children, who are also all citizens and nationals of Pakistan.

2.  In or about November 1990, MAHMOOD AHMAD, his wife and two children entered the United States to begin employment as a stenographer for the Kingdom of Saudi Arabia. MAHMOOD AHMAD received an A-2 Diplomat and Foreign Government Official visa provided to both him and his family at the request of the Kingdom of Saudi Arabia which sponsored the defendant for the A-2 visa. An A-2 Diplomat and Foreign Government Official visa requires the visa holder to engage solely in official activities for the government who sponsored the visa.

3.  On or around November 21, 1996, MAHMOOD AHMAD retained an immigration law firm located in Arlington, Virginia, for assistance in acquiring Lawful Permanent Residence (LPR), also known as a green card, for himself and his wife and children.

4.  MAHMOOD AHMAD's first application for LPR status in 1998, based upon an alleged secretarial job offer with a local pizza shop, fell through when the company went out of business.

5.  MAHMOOD AHMAD's employment for the Embassy of the Kingdom of Saudi Arabia in Washington D.C., allowed him to often book travel and limousine services with local companies for the embassy.

6.  In and around 2000, a major transportation company utilized by the Embassy of the Kingdom of Saudi Arabia was Bethany Limousine and Buses, Inc., also known as BLS, owned by Hilmi Aburish.

7.  In and around 2000, the Embassy of the Kingdom of Saudi Arabia was the largest client of BLS.  Hilmi Aburish, as the owner of BLS, became acquainted with MAHMOOD AHMAD through the defendant's contracting Saudi Arabian Embassy business with BLS.

8.  On April 27, 2000, MAHMOOD AHMAD again retained his immigration law firm to handle his green card application, this time using BLS as the sponsoring employer.

9.  In a letter dated April 27, 2000, MAHMOOD AHMAD's immigration lawyer advised Hilmi Aburish that MAHMOOD AHMAD said BLS was willing to sponsor MAHMOOD AHMAD for LPR status and provided Hilmi Aburish with the prepared forms for the secretarial job with BLS which required only his signature.

10.  On June 1, 2000, Hilmi Aburish certified that no one applied for the secretarial job with BLS despite advertising in a local paper and posting the job opening at the BLS job site.

2

11.   On April 24, 2001, MAHMOOD AHMAD wrote his immigration lawyer that he had received notices from the Immigration and Naturalization Service (INS) concerning the deportation of his son and daughter from the United States.

12.   On April 24, 2001, MAHMOOD AHMAD, by hand delivery, provided his immigration firm with the Alien Labor Certification Application they had prepared for him signed and initialed by Hilmi Aburish, owner of BLS.

13.   By letter dated November 6, 2001, MAHMOOD AHMAD's counsel informed the defendant that his labor certification application with BLS had been approved.   By letter bearing the same date, MAHMOOD AHMAD's immigration law firm provided Hilmi Aburish with the I-140 Immigrant Visa Petition for his signature.   .

14.   On January 8, 2002, Hilmi Aburish, as owner of BLS, signed the prepared Form I-140 provided to him from MAHMOOD AHMAD's immigration law firm.

15.   By hand delivered letter dated April 26, 2002, MAHMOOD AHMAD provided his immigration law firm with the signed and notorized Certificate of Employment from Hilmi Aburish.   The signed certificate asserts that AHMAD will be a full time secretary paid $13.65 per hour.

16.   On June 7, 2002, MAHMOOD AHMAD wrote his immigration lawyer urging them to speed up the process to obtain his green card as he was very concerned about the ability of his oldest son to also obtain a green card as a dependent based upon this secretarial job with BLS. AHMAD wrote:   "I had told you . . . earlier that my case has taken very long (since 1996) and my son is entering his 21 year in August 2002 (this year)."

3

17. On July 1, 2002, MAHMOOD AHMAD's immigration lawyer advised MAHMOOD AHMAD in writing that the petition had been approved and that "you must now work for your petitioning employer on a permanent basis." The defendant responded on the same day that he "will be working for the petitioning employer very soon."

18. On July 1, 2002, MAHMOOD AHMAD signed a Form 508 Waiver of Rights, Privileges, Exemptions and Immunities for any diplomatic immunity associated with his prior A-2 status. He had previously signed this waiver of any diplomatic immunity on May 10, 1999, during his initial effort to acquire a green card.

19. On September 5, 2002, MAHMOOD AHMAD wrote his immigration attorney asking "how much time is needed for the actual green cards to arrive. I and my family were interviewed on July 1, 2002. More than two months have been elapsed [sic] but none of us have received our Green Card."

20. On December 17, 2002, MAHMOOD AHMAD wrote his immigration attorney complaining that he and his family have still not received their green cards.

21. On December 27, 2002, MAHMOOD AHMAD told his attorney that they still had not received their green cards.

22. On February 5, 2003, MAHMOOD AHMAD wrote his immigration attorneys that they still did not have their green cards and asking that the firm "look into this matter urgently. . . ."

23. On February 10, 2003, MAHMOOD AHMAD wrote his immigration attorney that he and his family had been waiting for the green cards for about eight months and had been unable to travel to Pakistan during that period.

4

24.     On February 13, 2003, MAHMOOD AHMAD wrote his immigration attorney asking about the "Green Card Status." "I think my case is taking too much time, I really do not know how long it is going to take? It is almost seventh year since I had started my case with your firm. Moreover, I have completed almost eight months employment with Mr. Hilmi Abu Rish (my employer). He asked me a couple of times that under the current situation, due to bad economy, he cannot afford me to continue his employment."

25.     MAHMOOD AHMAD's immigration lawyer responded the next day, February 14, 2003, that he could not assure the defendant he would not "run into a problem if you no longer work for your employer. If you run into a problem, you must demonstrate that the employer did have a job for you when you got your green card, but due to recent economic depression, the business dropped and could not afford to keep you any longer."

26.     On February 18, 2003, MAHMOOD AHMAD wrote "I spoke to my employer and he has agreed to provide me a letter, stating that he cannot afford me any more due to his financial situation. Now I request you provide to me an outline of that letter from my employer, so I can get the same signed from him."

27.     On February 18, 2003, MAHMOOD AHMAD's lawyer detailed how the defendant should draft his own termination letter. "In this letter for your employer, the letter should contain the following info, if this is accurate: 1. The employer did have sufficient business and the intention to require your permanent services at the time when you received your permanent resident status. 2. The employer did employ you pursuant to the terms and conditions of the sponsorship. 3. Due to recent economic depression or any other reasons explaining why the

5

business is unable to continue your employment at this time.   Have the letter signed before notary."

28.   On October 9, 2003, MAHMOOD AHMAD wrote a check for cash in the sum of $17,003.66 on his account at Riggs Bank.   Attached to his check were copies of fourteen BLS paychecks to him, dating as far back as February 2003, for a total of $12,876.22.   Attached to AHMAD's as yet not deposited fourteen paychecks for the past nine months, were his handwritten calculations of the total amount of his fourteen uncashed paychecks to which he also added the total tax withholdings taken from his fourteen paychecks, $3,581.20, and the $546.24 unemployment tax BLS paid for AHMAD, for a total of $17,003.66.   To these calculations and copies of his nine months of uncashed paychecks, AHMAD attached a signed receipt from the accountant for BLS together with a copy of the BLS accountant's driver's license:   "**Cash Receipt**   This is to certify that I have received an amount of US$17,003.66 (US Dollars Seventeen Thousand Three and 66 cents) in cash from Mahmood Ahmed.   October 9, 2003.   Signature [signed], VA DL #XXX-XX-XXXX, Name:   SH, BLS Limo Group."   These documents were recovered from AHMAD's residence during the execution of a federal search warrant in 2008.

29.   On October 10, 2003, MAHMOOD AHMAD deposited his BLS paychecks from December 28, 2002 through May 16, 2003, into his Riggs Bank account, for a total of $9,157.

30.   On October 14, 2003, MAHMOOD AHMAD deposited his BLS paychecks from May 17, 2003 through September 19, 2003, into his Riggs Bank account, for a total of $6,466.32.

31.   On December 5, 2003, MAHMOOD AHMAD filed a form DS-2006, Notification of Change Identification Card Request, with the United States Department of State notifying them that his status had changed to LPR and attaching his fraudulently acquired green card received

6

days earlier.   The State Department thereafter issued MAHMOOD AHMAD an Official

Identification Card identifying him as a stenographer for the Saudi Arabian Embassy.   From the

date of issuance to present, AHMAD has renewed these Identification Cards as they have expired

based upon his fraudulently acquired green cards.

32.   On January 20, 2004, MAHMOOD AHMAD deposited seven of his BLS paychecks

from September 20, 2003 through December 26, 2003, in his Riggs Bank account, for a total of

$6,466.32 .

33.   On June 3, 2007, MAHMOOD AHMAD applied for Naturalization based upon his

fraudulently acquired green card.   He falsely claimed he had never committed a crime or offense

for which he had not been arrested.   In his Application for Naturalization, Form N 400, he claimed

he had been a Lawful Permanent Resident for at least five years.   He filed this form himself using

his home residence in McLean, Virginia.

34.   In his N 400 application for citizenship, MAHMOOD AHMAD was asked to identify

"every place you have worked" for the last five years.   AHMAD only listed one employer during

the last five years - the Royal Embassy of Saudi Arabia.   No other employment was identified

since June 3, 2002.   The form was submitted to the federal government, signed as accurate under

the penalty of perjury by AHMAD.

35.   On April 9, 2008, MAHMOOD AHMAD met with his green card immigration counsel

and advised him that he was in serious trouble because he did not identify his green card employer

on his N 400.   AHMAD said that the Federal Bureau of Investigation (FBI) had charged his

employer with immigration fraud.

36.   On May 28, 2008, the FBI executed a search warrant on MAHMOOD AHMAD's residence in McLean, Virginia.   AHMAD told the FBI that he had worked at the Saudi Arabian Embassy as an accountant since 1990.   When questioned about his claimed work at BLS, AHMAD said he was a consultant and had worked from his residence.

37.   An approved Labor Certification and Form I-140 (Immigrant Petition for Alien Worker), only grants permission to perform the job identified to the United States. In his application for permission to work in the United States on these forms, AHMAD specified that he would be answering calls and performing other secretarial duties at BLS.   Consulting is not identified in MAHMOOD AHMAD's Labor Certification and Form I-140 filed with the federal government.

38.   When MAHMOOD AHMAD was notified that his LPR status had been approved by INS by notice dated November 25, 2003, this notification alerted AHMAD that his LPR or green card would expire in ten years and he would need to renew it before it expired.   On July 12, 2012, ten years after his green card's approval in July 2002, AHMAD contacted his immigration counsel and asked to meet.

39.   On July 13, 2012, MAHMOOD AHMAD repeated his 2008 conversation with the FBI about his N 400 and how he had blamed his lawyer for the omission of his sponsoring employer on that form. The immigration counsel observed that AHMAD filed the form himself.   AHMAD then discussed the possibility of being removed from the United States and whether he could reacquire A-2 status as an embassy employee, where he had been working full time all along.

40.   On July 22, 2013, several months before his fraudulently acquired green card expired, MAHMOOD AHMAD filed a Form I-90, Application to Replace an Expiring Permanent Resident

8

Card, to renew his fraudulently obtained green card.   He completed this application himself, without the participation or knowledge of his immigration attorney.

41.     On August 23, 2013, at Huntington, Virginia, within the Eastern District of Virginia, MAHMOOD AHMAD was fingerprinted and photographed for the renewed green card.

42.     On November 30, 2013, MAHMOOD AHMAD arrived at Dulles International Airport in the Eastern District of Virginia and used his renewed green card to enter the United States. AHMAD told the Customs and Border Patrol Officers that he is the administrative assistant to the Saudi Arabian Ambassador and that he has worked for the Ambassador for 23 years.

## COUNT ONE

### Conspiracy to Commit Immigration and Naturalization Fraud
(18 U.S.C.§ 371)

THE GRAND JURY FURTHER CHARGES THAT:

1.  The Grand Jury realleges and incorporates by reference the GENERAL ALLEGATIONS of this indictment.

2.  Beginning in and around March 2000 and continuing today, MAHMOOD AHMAD, did unlawfully and knowingly, combine, conspire, confederate, and agree together with other persons, known and unknown to the Grand Jury, to commit the following offenses against the United States:

A.  To knowingly make under oath, and as permitted under penalty of perjury, and knowingly subscribe as true, a false statement with respect to a material fact in an application, affidavit, and other document required by the immigration laws and regulations prescribed thereunder, and knowingly to present an application containing any such false statement, in violation of Section 1546(a) of Title 18, United States Code.

B.  To knowingly attempt to procure and obtain naturalization and citizenship to which MAHMOOD AHMAD was not lawfully entitled to possess in violation of Section 1425 of Title 18, United States Code.

### Manner and Means of the Conspiracy

The purpose of this conspiracy was to obtain Lawful Permanent Resident status for MAHMOOD AHMAD and his wife and children and eventual United States Citizenship for

10

MAHMOOD AHMAD and his family. The manner and means by which the conspirators conducted the conspiracy included the following:

1. It was part of the conspiracy that the co-conspirators would and did play different roles in the immigration fraud.

2. It was further part of the conspiracy that MAHMOOD AHMAD provided materially false information to the immigration authorities of the United States to support his applications for Lawful Permanent Residence and thereafter for naturalization in the United States.

3. It was further part of the conspiracy that Hilmi Aburish signed the necessary forms supplied to him by MAHMOOD AHMAD and the immigration law firm used by MAHMOOD AHMAD.

Overt Acts

Between in and around March 2000, and continuing through the present, within the Eastern District of Virginia and elsewhere, in furtherance of the above-described conspiracy, and in order to carry out the objects thereof, MAHMOOD AHMAD and his co-conspirators committed the following overt acts, among others:

1. In and around March 2000, MAHMOOD AHMAD approached Hilmi Aburish and asked him to allow AHMAD to pose as an employee of BLS and allow his company to file immigration paperwork generated by AHMAD's law firm sponsoring AHMAD as an alien worker.

2. In and around May 2000, MAHMOOD AHMAD, using the services of the immigration firm retained by him in Arlington, Virginia, caused a United States Department of Labor Form ETA 750 (Application for Alien Employment Certification) to be created. The Form ETA 750, also known as the "Labor Certification," must establish that the alien beneficiary will not displace

11

United States workers or adversely affect wages or working conditions of United States workers. The Form ETA 750 stated, in part:

    A. That BLS had offered AHMAD a job;

    B. That AHMAD would work 40 hours per week for BLS and would perform specific secretarial duties; and

    C. If the Department of Labor approved the ETA 750, AHMAD would work for BLS.

The form was signed by Hilmi Aburish, as the owner of BLS, as true and correct under penalty of perjury on May 20, 2000.

    3. On or about March 4, 2002, using the services of a law firm based in Arlington, Virginia, MAHMOOD AHMAD caused a Form I-140 (Immigrant Petition for Alien Worker) to be filed on behalf of AHMAD in an effort to become a permanent resident of the United States. The Form I-140 stated, in part:

    A.    AHMAD would work for BLS;

    B.    AHMAD would hold a full-time position with BLS;

    C.    AHMAD would hold a permanent position with BLS;

    D.    BLS would pay AHMAD $13.65 per hour; and

    E.    AHMAD would be employed to answer calls, write correspondence, type forms and documents.

The form was signed by Hilmi Aburish, as the owner of BLS, as true and correct under penalty of perjury on January 8, 2002.

    4. Also, on or about April 25, 2002, using the services of a law firm based in Arlington,

12

Virginia, MAHMOOD AHMAD caused a Form I-485 (Application to Adjust Status to Permanent Resident) to be filed.   The I-485 Application stated, in part:

    A.   AHMAD resides in McLean, Virginia, in the Eastern District of Virginia; and

    B.   AHMAD claimed that he had never, by fraud and willful misrepresentation of a material fact, ever sought to procure and procured a visa, other document, entry into the United States or any other immigration benefit.

The form was signed by AHMAD as true and correct under penalty of perjury in April 25, 2002.

5.  On or about July 1, 2002, MAHMOOD AHMAD's immigration lawyer advised MAHMOOD AHMAD in writing that the petition had been approved and that "you must now work for your petitioning employer on a permanent basis."   AHMAD assured, falsely, on the same day that he "will be working for the petitioning employer very soon."

6.  In an effort to make it appear that MAHMOOD AHMAD was an employee of BLS, Hilmi Aburish caused bi-weekly paychecks from BLS to be issued to AHMAD.   Many paychecks were not immediately cashed to reduce the financial burden on BLS from this fraudulent employment.

7.  On or about October 9, 2003, MAHMOOD AHMAD wrote a check for cash in the sum of $17,003.66 on his account at Riggs Bank.   He provided this cash to the accountant for BLS on the same day to replace the amount of his as yet uncashed paychecks and the tax withholdings taken from his paychecks and the unemployment tax BLS paid for AHMAD.

8.  On or about October 10 and 14, 2003, MAHMOOD AHMAD deposited nine months of paychecks from BLS totaling $15,623.32.

9.  On or about July 15, 2007, MAHMOOD AHMAD filed a DHS Form N-400 (Application for Naturalization) with the Department of Homeland Security, United States Citizenship and

Immigration Services.   On the DHS Form N-400, AHMAD was asked to list his employers for the previous five years.   AHMAD listed that he was employed by the Royal Embassy of Saudi Arabia from November 3, 1990 to present.   AHMAD did not list any employment with BLS or any other employer since July 2002.   The N-400 further stated, in part:

> A. That AHMAD had never committed a crime for which he had not been arrested;
>
> B. That AHMAD had never given false and misleading information to any U.S. government official when applying for any immigration benefit.

The N-400 was signed by AHMAD as true and correct under penalty of perjury.

10. On or about April 9, 2008, MAHMOOD AHMAD met with his immigration lawyer and told him that the FBI had charged his green card employer with immigration fraud for his LPR. He also explained he was in trouble because he had omitted his green card employer on his N 400 form.   AHMAD asked if he should file a supplement to his N 400 to include the green card employer's name claiming he had worked there in the last five years.   His lawyer advised him against making this representation.

11. In and around spring of 2008, MAHMOOD AHMAD met with Hilmi Aburish at Aburish's house in Arlington, Virginia.   During this meeting, AHMAD and Hilmi Aburish agreed to tell the federal agents with the FBI that AHMAD was a "consultant" for BLS when in fact AHMAD never worked for BLS in any capacity.

12. On or about May 28, 2008, MAHMOOD AHMAD told federal agents that he approached Hilmi Aburish in an attempt to obtain employment at BLS so that AHMAD could eventually

14

obtain U.S. citizenship.   During this interview, AHMAD claimed that he was an employee of BLS.

13.   On July 12, 2012, MAHMOOD AHMAD met with his immigration lawyer and told him that when he was interviewed by the FBI about his N 400, he told them his lawyer was responsible for the omission of his green card employer.   He also told his lawyer the FBI had found evidence that he had never worked for BLS.   AHMAD asked whether he would be able to avoid removal from the United States.

14.   On or about July 22, 2013, MAHMOOD AHMAD filed a Form I-90 (Application to Replace Permanent Resident Card).   On the Form I-90 AHMAD asserted that he was Lawful Permanent Resident who was admitted to the United States on July 1, 2002, as a skilled worker pursuant to 8 U.S.C. § 1153(b)(3)(A)(i).

(All in violation of Title 18, United States Code, Section 371.)

## COUNT TWO

### Attempt to Procure Citizenship or Naturalization Unlawfully
(18 U.S.C. § 1425(a))

THE GRAND JURY FURTHER CHARGES THAT:

1. The Grand Jury realleges and incorporates by reference the GENERAL ALLEGATIONS and COUNT ONE of this Indictment.

2. On or about July 15, 2007, in Fairfax County, Virginia, within the Eastern District of Virginia, the defendant, MAHMOOD AHMAD, did unlawfully and knowingly attempt to procure and obtain, contrary to law, naturalization, to wit: the defendant did knowingly make under oath, and subscribe as true under penalty of perjury under 28 U.S.C. § 1746, a false statement with respect to a material fact in a document required by the immigration laws and regulations prescribed thereunder, and knowingly presented such document which contained a false statement and which failed to contain a reasonable basis in law and fact, to wit: the defendant, MAHMOOD AHMAD, filed a Form N-400 (Application for Naturalization), in which he falsely claimed that he had never committed a crime for which he had not been arrested and that he had never given false and misleading information to any United States government official when applying for any immigration benefit when in fact the defendant submitted this application for naturalization based upon a fraudulently acquired LPR or green card status.

(In violation of Title 18, United States Code, Section 1425(a).)

## COUNT THREE

### Immigration Document Fraud
(18 U.S.C. § 1546(a))

THE GRAND JURY FURTHER CHARGES THAT:

1. The Grand Jury realleges and incorporates by reference the GENERAL ALLEGATIONS and COUNT ONE of this Indictment.

2. On or about July 22, 2013, within the Eastern District of Virginia and elsewhere, the defendant, MAHMOOD AHMAD, did knowingly make under oath, and subscribe as true under penalty of perjury under 28 U.S.C. § 1746, a false statement with respect to a material fact in an application, and knowingly presented such application which contained such false statement and which failed to contain a reasonable basis in law and fact, to wit: the defendant, MAHMOOD AHMAD, filed a Form I-90, Application to Replace Permanent Resident Card, which falsely stated that he was a Lawful Permanent Resident admitted to the United States on July 1, 2002, as a skilled worker pursuant to 8 U.S.C. § 1153(b)(3)(A)(i) knowing that his LPR status was procured by fraud and otherwise unlawfully obtained.

(In violation of Title 18, United States Code, Section 1546(a).)

## COUNT FOUR

### Immigration Document Fraud
(18 U.S.C. §1546(a).)

THE GRAND JURY FURTHER CHARGES THAT:

1. The Grand Jury realleges and incorporates by reference the GENERAL ALLEGATIONS and COUNT ONE of this Indictment.

2. On or about November 30, 2013, within the Eastern District of Virginia, the defendant, MAHMOOD AHMAD, did knowingly use and possess an immigrant visa and other document prescribed by statute or regulation for entry into and as evidence of authorized stay and employment in the United States, that is a Permanent Resident Card in the name Mahmood Ahmad, which the defendant knew to be procured by means of a false claim and statement, otherwise procured by fraud, and otherwise unlawfully obtained, in that the defendant presented his Permanent Resident Card, also known as a green card, to a United States Customs and Border Protection Officer at the Washington Dulles International Airport, to gain entry into the United States.

(In violation of Title 18, United States Code, Section 1546(a).

A TRUE BILL:

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office.

FOREPERSON OF THE GRAND JURY

DANA J. BOENTE
UNITED STATES ATTORNEY

By: _____
Ronald L. Walutes, Jr./ C. Alexandria Bogle
Assistant United States Attorney/
Special Assistant United States Attorney