IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:14cr164 (JCC) |
| | ) | |
| MAHMOOD AHMAD, | ) | |
| | ) | |
| Defendant. | ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Mahmood
Ahmad's ("Defendant") Motion to Disclose Grand Jury Materials,
[Dkt. 6], Motion for Discovery, [Dkt. 10], and Motion for Bill
of Particulars, [Dkt. 12].  For the reasons set forth below, the
Court will deny Defendant's motions.

## I. Background

### A. Factual Background

On May 8, 2014, a federal grand jury returned a four-
count indictment charging Defendant with immigration fraud,
conspiracy to commit immigration fraud, and attempted
naturalization fraud.  (Indictment [Dkt. 1] at 1.)  The facts
alleged in the indictment are summarized below.

Defendant, along with his wife and two children, are
native citizens of the Islamic Republic of Pakistan.
(Indictment at 1.)  Sometime in 1990, Defendant entered the
United States to work as a stenographer for the Kingdom of Saudi

Arabia. (*Id.*) The Saudi government provided Defendant with an A-2 Diplomat and Foreign Government Official visa. (*Id.*) An A-2 visa requires the holder to engage solely in official activities for the sponsoring government.

In November 1996, Defendant hired immigration counsel for assistance in acquiring a green card for himself and his family. (Indictment at 2.) Defendant's application, based upon an alleged secretarial job with a local pizza shop, fell through when the company went out of business. (*Id.*)

In April 2000, Defendant again retained counsel to handle his green card application, this time using Bethany Limousine and Buses, Inc. ("BLS") as the sponsoring employer. (Indictment at 2.) According to the Government, Defendant's job with the Saudi Embassy allowed him to frequently book limousine services through BLS, whereby he became acquainted with its owner Hilmi Aburish ("Aburish"). (*Id.*) In a letter dated April 27, 2000, Defendant's attorney provided Aburish with the necessary forms and confirmed that BLS was willing to sponsor Defendant for a green card. (*Id.*) On June 1, 2000, Aburish affirmed that no one had applied for a posted secretarial job and he was hiring Defendant to fill the position. (*Id.*)

On April 24, 2001, Defendant hand delivered an Alien Labor Certification Application signed by Aburish. (Indictment at 3.) By letter dated November 6, 2001, counsel advised

2

Defendant that his application with BLS had been approved. (*Id.*) Counsel simultaneously provided Aburish with a I-140 Immigrant Visa Petition for his signature. (*Id.*) Aburish signed the Form I-140 and certified that Defendant would be a full time secretary at $13.65 per hour. (*Id.*)

On July 1, 2002, Defendant's attorney advised him in writing that the visa petition had been approved, and that "you must now work for your petitioning employer on a permanent basis." (Indictment at 4.) Defendant responded that he "will be working for the petitioning employer very soon." (*Id.*) The Government contends that Defendant never went to work for BLS and his job was fabricated so he could apply for a green card. (*Id.* at 6, 13.)

Defendant received his green card in 2003, and he quickly changed his immigration status to "lawful permanent resident." (Indictment at 6.) On June 3, 2007, Defendant applied for naturalization. (*Id.* at 7.) In his application, Defendant was asked to identify "every place you have worked" for the last five years. (*Id.*) Defendant listed only one employer – the Royal Embassy of Saudi Arabia. (*Id.*) Defendant signed this document under the penalty of perjury. (*Id.*)

On April 9, 2008, Defendant met with his immigration attorney and told him that the FBI had charged BLS with immigration fraud. (Indictment at 7.) Defendant also mentioned

that he had omitted his employment with BLS on his
naturalization application.  (*Id.*)  His attorney advised him
against filing a supplement.  (*Id.*)  Sometime thereafter,
Defendant met with Aburish and, according to the Government,
they agreed to tell federal agents that Defendant was a
consultant for BLS when in fact he never worked there.  (*Id.* at
14.)

On May 28, 2008, the FBI executed a search warrant on
Defendant's residence.  (Indictment at 8, 14.)  Defendant told
the FBI that he had worked at the Saudi Embassy since 1990.
(*Id.* at 8.)  When questioned about his claimed work at BLS,
Defendant replied that he was a consultant although his visa
application identified him as a secretary.  (*Id.*)  In light of
the foregoing, the Government contends that Defendant, working
with Aburish, fabricated his employment history to fraudulently
obtain a green card and eventually permanent citizenship in the
United States.

**B. Procedural Background**

Defendant's instant motions largely focus on the grand
jury proceedings and the testimony of his former immigration
attorneys, Michael Lin ("Lin") and Stanton Braverman
("Braverman").  The procedural history of these proceedings, as
alleged by Defendant, is as follows.

4

In December 2013, the Government issued a grand jury subpoena on Lin, claiming that he represented Defendant regarding his 2002 green card application. (Def.'s Supp. Pet. [Dkt. 7] at 1.)  When Defendant became aware of the subpoena, defense counsel contacted Lin and advised him that Defendant was not waiving any attorney-client privilege. (*Id.*)  At a hearing held on January 31, 2014, Judge O'Grady conferred judicial immunity on Lin. (*Id.* at 2.)  The Court simultaneously ordered Lin to produce certain documents regarding his representation of Defendant. (*Id.*)

On March 20, 2014, Defendant became aware that the Government had also issued a grand jury subpoena on Braverman. (Def.'s Supp. Pet. at 2.)  Defendant, along with Braverman, moved to quash the subpoena on grounds that his testimony would violate the attorney-client privilege. (*Id.*)

A hearing was held before Judge O'Grady on April 4, 2014.  The Government asserted the crime-fraud exception regarding Defendant's 2002 greed card application. (Def.'s Supp. Pet. at 3.)  After considering the parties' arguments, Judge O'Grady concluded that the crime-fraud exception had been established and permitted the Government's proposed discovery. (*Id.*)  On April 7, 2014, Judge O'Grady entered the following order:

>Before the Court is the Government's Motion
>to Compel Testimony before the Grand Jury
>(Dkt. No. 6), as well as two Motions to
>Quash Grand Jury Subpoenas (Dkt. Nos. 8,
>10).  The Court heard oral argument on these
>motions on March 21, 2014 and April 4, 2014.
>The Court finds that the government has
>presented prima facie evidence of the
>application of the crime-fraud exception,
>and Mr. Lin and Mr. Braverman are therefore
>ORDERED to appear before the Grand Jury as
>directed by the government.

(Order, 1:14-DM-2 [Dkt. 16].)

Both parties have filed pleadings and responsive materials.  Accordingly, Defendant's motions are addressed in turn below.

## II. Analysis

### A. Motion to Disclose Grand Jury Materials

Citing to Federal Rule of Criminal Procedure 6(e)(3), Defendant first asks the Court "to disclose the grand jury testimonies of attorneys Michael Lin and Stanton Braverman, as well as all documents and/or exhibits used during their testimony." (Mot. for Grand Jury Trs. at 1.)  Defendant contends that these materials are necessary to support a subsequent motion to dismiss on grounds that their testimony "violated the attorney-client privilege." (*Id.*)  Specifically, Defendant argues:

>In this case, these two lawyers were placed
>before the grand jury to testify against the
>accused.  The trial court, as to Mr.
>Braverman, authorized the production of

> material for the grand jury that violated
> the attorney-client privilege, and was
> outside of the scope of the government's
> claim of entitlement. . . .  It is, based on
> information and belief, understood that the
> court did not vet what Mr. Lin produced, as
> required by the law, and that unauthorized
> material made it to the grand jury and the
> indictment.

(*Id.* at 1-2.)  In short, Defendant claims that Judge O'Grady erred in applying the crime-fraud exception, and thus the grand jury heard protected or privileged attorney-client material.

The secrecy of grand jury proceedings is well established.  *See United States v. Penrod,* 609 F.2d 1092, 1098 (4th Cir. 1979).  This important policy is codified in Federal Rule of Criminal Procedure 6(e), which generally bars disclosure of "matter[s] occurring before the grand jury."  Fed. R. Crim. P. 6(e)(2).  One exception to this general rule allows disclosure of grand jury materials to a criminal defendant "who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  Fed. R. Crim. P. 6(e)(3)(E)(ii).  "The decision to permit disclosure [of grand jury transcripts] is within the discretion of the trial court judge who must assess whether the need for disclosure overbalances the requirements of secrecy."  *United States v. Bunty,* 617 F. Supp. 2d 359, 372 (E.D. Pa. 2008).

The aforementioned exemption, however, is not an invitation to engage in a fishing expedition to search for grand

jury misconduct when there are no grounds to believe that any
wrongdoing has occurred.  Because grand jury proceedings are
entitled to a strong presumption of regularity, a defendant
seeking disclosure of grand jury information bears the heavy
burden of establishing that "particularized and factually based
grounds exist to support the proposition that irregularities in
the grand jury proceedings may create a basis for dismissal of
the indictment." *United States v. Abcasis*, 785 F. Supp. 1113,
1119 (E.D.N.Y. 1992).  This burden cannot be satisfied with
"conclusory or speculative allegations of misconduct." *United
States v. Loc Tien Nguyen,* 314 F. Supp. 2d 612, 616 (E.D. Va.
2004) (citation omitted)*; see also United States v. Shane,* 584
F. Supp. 364, 367 (E.D. Pa. 1984) ("[C]ourts generally reject
unsupported beliefs and conjectures as grounds for disclosure of
grand jury materials to defendants.").  "Indeed, some courts
have held that a defendant must support allegations of grand
jury misconduct or abuse 'with affidavits or other proffered
evidence' and that '[s]uch affidavits or other evidence should
be of a particularity sufficient to support a finding that
inherently suspect procedures were used before the grand jury.'"
*Nguyen,* 314 F. Supp. 2d at 616 (citation omitted).

        In this case, Defendant has not made the requisite
showing to permit disclosure under Rule 6(e)(3)(E)(ii).  Judge
O'Grady, after careful consideration, ruled that Braverman and

Lin's testimony was permissible under the crime-fraud exception. To the extent Defendant seeks the grand jury minutes so he can argue that Judge O'Grady erred, his request is denied.  *See Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816 (1988) (explaining the law of the case doctrine, which "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"); *United States v. Aramony,* 166 F.3d 655, 661 (4th Cir. 1999) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (citation omitted)). Although a district court can revisit prior decisions, "courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice."  *Christianson,* 486 U.S. at 817 (citation omitted).  It cannot be said that Judge O'Grady's ruling was clearly erroneous or would work a manifest injustice.  As such, it is appropriately treated as the law of the case.  Put differently, Defendant has already presented his arguments against the crime-fraud exception and the Court is not prepared to afford him yet another bite at the apple.

Defendant's argument that the Government presented evidence beyond the limits set by Judge O'Grady and thus the

grand jury transcripts are necessary is similarly denied. (*See* Def. Reply Br. to Grand Jury Testimony [Dkt. 21] at 6.) Defendant's reasoning is as follows: "[T]he Indictment includes privileged information outside of the crime-fraud exception. This indicates the prosecution gave the grand jury privileged information, and the defense is entitled to that information so that it may write its motion to dismiss." (*Id.*) Defendant's admission that the indictment identifies the material allegedly disclosed in violation of the crime-fraud exemption undercuts his position that the transcripts are necessary to prepare a motion to dismiss. Moreover, the Government has disclosed all documents and evidence turned over by Lin and Braverman. As such, it appears Defendant has everything he needs to prepare a motion to dismiss. Defendant's purported need for disclosure does not overbalance the requirements of secrecy under such circumstances. Additionally, Defendant is not entitled to peruse the grand jury minutes in hopes of finding additional wrongdoing when there is no evidence of impropriety beyond what Defendant identifies in the indictment. *See United States v. Wilson,* 565 F. Supp. 1416, 1436-37 (S.D.N.Y. 1983) (denying motion to inspect grand jury minutes for lack of factual support to overcome presumption of regularity, noting that "speculation and surmise as to what occurred before the grand jury is not a substitute for fact"); *see also Abcasis*, 785 F. Supp. at 1119.

For these reasons, the Court will deny Defendant's motion.

## B. Motion for Discovery

In his discovery motion, Defendant asks the Court to compel production of the following materials within five days:

> (1) All pleadings filed by the prosecution, and by, or on behalf of Attorney Michael Lin regarding that Attorney's grand jury testimony in this case;
>
> (2) Transcripts of all court proceedings regarding the grand jury testimony of Attorney Michael Lin, including the secret hearing on 21 March 2014;
>
> (3) All applications by the prosecution to the Department of Justice pertaining to the subpoenaing of Attorneys Michael Lin and Stanton Braverman as grand jury witnesses for the prosecution, including, but not limited to, applications for the authorization to seek formal judicial immunity for these two attorneys;
>
> (4) All reports, memoranda, or other documentation, in any form, of proffer sessions, after 19 June 2008, between counsel for Mr. Ahmad and Senior Litigation Counsel for the Department of Justice, Nathaniel B. Edmonds, Esq., at his office located at 1400 New York Avenue, NW, Washington, DC 20005, and the same from FBI Special Agent Travis G. Wiehn, whose office address is 9325 Discovery Boulevard, Manassas, VA 20109;
>
> (5) All reports, memoranda, or other documentation, in any form, regarding the use of the information from the proffer sessions described above; and

> (6) All reports, memoranda, or other
> documentation, in any form, regarding the
> final decision regarding the government's
> final decision about its intended
> relationship with Mr. Ahmad.

(Discovery Mot. at 1-2.)  Defendant maintains that this information is necessary "to pursue a motion to dismiss based on grand jury testimony by attorneys Michael Lin and Stanton Braverman.  There is also the issue of the government's delay . . . in bringing the indictment[.]  Finally, there is the issue of proffers made by the defense under Rule 11 . . . ., which may not be used by the prosecution at trial." (*Id.* at 1.)  The Government opposes Defendant's motion. (*See* Gov't Opp'n to Grand Jury Materials [Dkt. 14] at 5-7.)

Defendant's first three requests again ask the Court to divulge grand jury materials. (Discovery Mot. at 1.)  As discussed above, Defendant has not made the requisite showing to permit disclosure of such information.  Accordingly, the Court will deny these requests subject to the Court's ruling at the hearing that defense counsel may access the grand jury docket.

Defendant next demands all "reports, memoranda, or other documentation" resulting from any proffer sessions between defense counsel and the Government since June 8, 2009. (Discovery Mot. at 1.)  Defendant, however, has failed to proffer a compelling argument that he is entitled to this information.

12

Rule 16 of the Federal Rules of Criminal Procedure governs the conduct of discovery in criminal cases. It is a rule of checks and balances. Rule 16(a)(1) recognizes the evidence the government is required to disclose upon request, including the defendant's statements, his prior record, documents and tangible objects, reports of examinations and tests, and opinions of expert witnesses. Fed. R. Crim. P. 16(a)(1). The next section identifies the information not subject to disclosure. It provides:

> Except as provided in . . . (a)(1), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or other government agents in connection with the investigation or prosecution of the case. Nor does the rule authorize the discovery or inspection of statements made by government witnesses or prospective government witnesses except as provided in 18 U.S.C. § 3500.

Fed. R. Crim. P. 16(a)(2). Generally speaking, "a defendant may not examine Government work product in connection with his case" unless specifically authorized by Rule 16(a)(1). *United States v. Armstrong,* 517 U.S. 456, 463 (1996).

Defendant is plainly seeking Government work product in the form of internal documents and memoranda; yet, he has failed to identify how this evidence is discoverable under Rule 16(a)(1). As best the Court can discern, Defendant wants this

13

information because it "may not be used by the prosecution at trial." (Discovery Mot. at 1.) Rule 16(a)(1) does not authorize discovery on such grounds and the Court declines to carve out an exception under these circumstances. *See United States v. Wilford,* 961 F. Supp. 2d 740, 756 (D. Md. 2013).[1]

In his reply brief, Defendant further elaborates that "the defense needs disclosure of the government's memoranda or reports of those proffer sessions" in order to "to enforce compliance with Rule 11[.]" (Def. Reply Br. [Dkt. 20] at 2.) In other words, Defendant wants this information to ensure it is not presented at trial. Defendant also argues that these reports "will support the defense argument [sic] regarding the government's unreasonable six-year delay in indicting this case[.]" (*Id.*) These arguments are unconvincing. Having personally participated in the proffer sessions, defense counsel is fully aware of the information exchanged and the timeframe of the Government's investigation. Accordingly, there is no need to disclose the Government's privileged work product in order for counsel to adequately enforce Rule 11 or prepare a motion to dismiss due to pre-indictment delay.

---

[1] Although the Government is not required to produce the identified documents at this time under Rule 16(a)(2), this rule does not override the constitutional mandates of *Brady v. Maryland,* 373 U.S. 83, 87 (1963) and *Giglio v. United States,* 405 U.S. 150, 154 (1972). If the internal documents identified by Defendant contain information that must be disclosed under Rule 16(a)(1), *Brady* or *Giglio,* the Court expects the Government to be mindful of its obligation and disclose such information in due time.

And finally, Defendant's request for all documents
resulting from any proffer sessions is too broad.  Rule 16 does
not permit "'a shotgun fishing expedition'" such as that
presented here.  *United States v. Anderson,* 481 F.2d 685, 694
(4th Cir. 1973) (citation omitted); *see also United States v.
Rufolo,* No. 89 Cr. 938, 1990 WL 29425, at *1 (S.D.N.Y. Mar. 13,
1990) (Rule 16(a)(2) held to bar disclosure of investigative,
agent, and surveillance reports prepared by federal agents),
*aff'd,* 930 F.2d 911 (2d Cir. 1991); *United States v. Feola,* 651
F. Supp. 1068, 1142-43 (S.D.N.Y. 1987) ("[A] defendant is not
entitled to the disclosure of portions of memoranda prepared by
a government attorney which contain summaries, evaluations of
evidence and discussions of the legal and practical problems of
prosecution.").

In his last request, Defendant asks the Court to
compel production of "[a]ll reports, memoranda, or other
documentation, in any form, regarding the final decision
regarding the government's final decision [sic] about its
intended relationship with Mr. Ahmad."  (Discovery Mot. at 2.)
It is impossible to decipher precisely what Defendant is seeking
from this language, and the Court cannot compel the Government
to respond to a request that is incomprehensible.  Apart from
its nebulousness, this request appears to be a general demand
for the Government's case file.  Such an unmitigated demand is

improper and will be denied. *See United States v. Maranzino*, 860 F.2d 981, 985 (10th Cir. 1988) ("Rule 16 does not authorize a blanket request to see the prosecution's file.").

### C. Motion for Bill of Particulars

Defendant's most recent motion, filed a mere three days before the scheduled hearing, asks the Court to order a bill of particulars clarifying the conspiracy charge. (Mot. for Bill of Particulars.) Defendant specifically asks for the following:

> (1) The identity of all alleged co-conspirators "known" to the prosecution who are alleged to have conspired with this accused but are not named in Count One.
>
> (2) Which sub-parts of 18 U.S.C. § 1546(a) is alleged of [sic] to have been violated in Count One?
>
> (3) Which sub-section of 18 U.S.C. § 1425 is alleged to have been violated in Count One?

(*Id.* at 1.) According to Defendant, "[i]n order to avoid double jeopardy and prepare a defense, the co-conspirators intended to be proved, as well as the specific sub-parts of the statutes, need to be specified." (Pl. Mem. in Support [Dkt. 13] at 2-3.)

Pursuant to Federal Rule of Criminal Procedure 7(f), this Court may direct the Government to file a bill of particulars. Fed. R. Crim. P. 7(f). The decision whether to grant or deny a motion for a bill of particulars is within the

sound discretion of the trial court.  *See Anderson*, 481 F.2d at 690.

The purpose of a bill of particulars is "to enable a defendant to obtain sufficient information on the nature of the charge against him so that he may prepare for trial, minimize the danger of surprise at trial, and enable him to plead his acquittal or conviction in bar of another prosecution for the same offense."  *United States v. Schembari*, 484 F.2d 931, 934-35 (4th Cir. 1973) (citing *United States v. Dulin*, 410 F.2d 363, 364 (4th Cir. 1969)).  It "is not to be used to provide detailed disclosure of the government's evidence in advance of trial."  *United States v. Automated Med. Labs., Inc.*, 770 F.2d 399, 405 (4th Cir. 1985) (citing *Anderson,* 481 F.2d at 690).  Instead, a bill of particulars "merely amplifies the indictment by providing missing or additional information so that the defendant can effectively prepare for trial."  *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996) (citations omitted).  A court "must not direct the government to reveal the details of its evidence or the precise manner in which it will make its proof in a bill of particulars."  *United States v. Cuong Gia Le*, 310 F. Supp. 2d 763, 781 (E.D. Va. 2004).  If "the indictment adequately details the charges, or the information requested is otherwise available, then no bill of particulars is required."

*United States v. Esquivel*, 755 F. Supp. 434, 436 (D.D.C. 1990) (citation omitted).

Defendant's request for the Government to identify all persons alleged to have participated in the conspiracy goes beyond the limited, enumerated purposes for which it is proper to require particularization. The Court is aware of no precedent requiring the Government to divulge such information in a conspiracy indictment, and Defendant points to none in his papers. In fact, the case law provides just the opposite. *See United States v. Jackson,* 757 F.2d 1486, 1491 (4th Cir. 1985) (finding no abuse of discretion in denial of motion for bill of particulars seeking the names of persons alleged to be in the conspiracy); *United States v. Macauley,* No. 1:11cr199, 2011 WL 4853366, at *3 (E.D. Va. Oct. 13, 2011) ("Where an indictment, as here, sets forth the discrete acts evidencing a defendant's involvement in a conspiracy, courts have held that the identities of co-conspirators need not be revealed."); *United States v. Rey,* 923 F.2d 1217, 1222 (6th Cir. 1991) ("As long as the indictment is valid, contains the elements of the offense, and gives notice to the defendant of the charges against him, it is not essential that a conspirator know all other conspirators."); *United States v. Frye,* No. 5:01-CR-30058, 2002 WL 385574, at *1 (W.D. Va. Feb. 20, 2002) (denying defendant's motion for a bill of particulars and noting that "the government

18

is not required to reveal the names of unindicted co-
conspirators or to disclose the identities of other persons
present when the offenses took place"). Moreover, the
Government appears to have provided ample discovery for
Defendant to prepare his case. (*See* Gov't Opp'n to Grand Jury
Materials at 5; Gov't Resp. to Bill of Particulars [Dkt. 15] at
2-3.) A defendant is not entitled "to an unnecessary bill of
particulars, where the underlying objectives of a [Rule 7]
motion are fully satisfied by informal and formal discovery."
*United States v. Taylor*, No. CRIM.A. 3:04CR227, 2005 WL 2298170,
at *4 (E.D. Va. Sept. 21, 2005); *see also United States v. Soc'y
of Indep. Gasoline Marketers of Am.*, 624 F.2d 461, 466 (4th Cir.
1980) (finding denial of bill of particulars not improper in
light of discovery provided by the government); *Cuong Gia Le*,
310 F. Supp. 2d at 781-82 (finding a bill of particulars
unwarranted where the government had provided, and would
continue to provide, the facts and circumstances of the offense
through ongoing discovery).

     The indictment in this case is sufficiently specific
to apprise Defendant of the nature of the charges against him,
and to permit Defendant to adequately prepare for trial.
Defendant's request to obtain a bill of particulars appears to
be an attempt to compel the Government to disclose its evidence
- and perhaps its legal theory of the case - in advance of

trial.  As noted above, the Court cannot "direct the [G]overnment to reveal the details of its evidence or the precise manner in which it will make its proof in a bill of particulars."  *Cuong Gia Le*, 310 F. Supp. 2d at 781. Accordingly, the Court will deny Defendant's request for a bill of particulars as to any unidentified co-conspirators.

The Court will also deny, as moot, Defendant's request for a bill of particulars clarifying which "sub-parts . . . [are] alleged to have been violated [in the conspiracy claim]," (Mot. for Bill of Particulars at 1), because the Government's opposition specifically lists the predicate offenses underlying this charge.  (*See* Gov't Resp. to Bill of Particulars at 1.)

### III. Conclusion

For the reasons set forth above, the Court will deny Defendant's motions.  An appropriate order will follow.

_____/s/_____

June 18, 2014                  James C. Cacheris
Alexandria, Virginia     UNITED STATES DISTRICT COURT JUDGE