```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF VIRGINIA

                        Alexandria Division

UNITED STATES OF AMERICA,     )
                              )
                              )
          v.                  )     1:14cr164 (JCC)
                              )
MAHMOOD AHMAD,                )
                              )
     Defendant.               )
```

**M E M O R A N D U M   O P I N I O N**

This matter came before the Court on July 10, 2014, for oral argument on Defendant Mahmood Ahmad's ("Defendant") Motion to Suppress, [Dkt. 31], and Motion to Dismiss, [Dkt. 41]. At the conclusion of the hearing, the Court denied Defendant's motions. This Memorandum Opinion memorializes and elaborates upon the reasons for the Court's oral ruling.

## I. Background

The facts of this case have been recited at length in an earlier opinion and will not be repeated here in any detail. (*See* Mem. Op. [Dkt. 28].) In brief, Defendant has been charged with immigration fraud, conspiracy to commit immigration fraud, and attempted naturalization fraud. (Indictment [Dkt. 1] at 1.) The Government alleges that Defendant fraudulently obtained a green card based upon a fictitious job at a local limousine company, Bethany Limousine and Buses, Inc. ("Bethany" or "BLS"). (*Id.* at 1-9.) Both parties have filed pleadings and responsive

1

materials. Defendant's motions and the facts relevant thereto are discussed below.

## II. Analysis

### A. Motion to Dismiss

In his Motion to Dismiss, Defendant alleges that his former immigration attorneys, Michael Lin and Stanton Braverman, impermissibly testified concerning attorney-client privileged matters before the grand jury. According to Defendant, "Judge O'Grady allowed the government to use privileged information, and did not review the produced documents prior to Attorney Lin's initial grand jury appearance to ensure that the documents bore a 'close relationship' to any alleged crime-fraud exception." (Mot. to Dismiss at 1.) Defendant continues, this "privileged information prejudiced and substantially influenced the grand jury's decision to indict [Defendant]." (*Id.*)

"A court may exercise its supervisory power to dismiss an indictment because of misconduct before the grand jury if the misconduct 'amounts to a violation of one of those few, clear rules which were carefully drafted and approved by [the Supreme Court] and by Congress to ensure the integrity of the grand jury's functions.'" *United States v. Outlaw,* 464 F. App'x 165, 167 (4th Cir. 2012) (quoting *United States v. Williams,* 504 U.S. 36, 46 (1992)). However, even if a defendant establishes such a violation, dismissal is only warranted if the violation resulted

2

in prejudice to the defendant. *See Bank of Nova Scotia v. United States,* 487 U.S. 250, 256 (1988); *Outlaw,* 464 F. App'x at 167. Such prejudice may be shown "only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia,* 487 U.S. at 256. The introduction of allegedly improper evidence during grand jury proceedings does not generally result in dismissal, "[o]therwise, before trial on the merits there would always be a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury, with resultant delay." *Costello v. United States,* 350 U.S. 359, 409 (1956).

Defendant's brief goes on at length regarding the improper evidence allegedly put before the grand jury and the numerous errors Judge O'Grady purportedly committed. (*See* Mot. to Dismiss at 1-14.) The Court, however, need not discuss this issue in depth because, even assuming the evidence Defendant identified was submitted to the grand jury in error, his motion still fails on account of a lack of prejudice. Prejudice in this context requires a showing that the improper conduct "substantially influenced the grand jury to indict." *Bank of Nova Scotia,* 487 U.S. at 256. Such is not the case here. The Court is persuaded that the Government presented such compelling

3

evidence regarding Defendant's illegal conduct outside of the disputed testimony that this testimony cannot be said to have prejudice the jury's decision.  The Government's case before the grand jury included, among other things, "testimony of [Defendant's] co-conspirator . . . who admitted [Defendant] was never employed at [BLS], immigration documents submitted to the government and signed by [Defendant] which contained false information, [and] paystubs and a receipt seized . . . at [Defendant's] home showing that [he] had paid $17,003.66 in cash to [BLS], the amount calculated by [Defendant] that [BLS] had paid [to him] in taxes and earnings."  (Gov't Opp'n to Mot. to Dismiss [Dkt. 43] at 13.)  On account of this evidence, there is no "grave doubt" that the jury's decision to indict was free from substantial influence of the alleged errors.  *Bank of Nova Scotia*, 487 U.S. at 256.   Finally, even if Defendant's arguments were compelling, dismissal would not be warranted on such grounds.  *See, e.g., United States v. Rondeau,* No. 92-CR-0080L, 2012 WL 1900553, at *1 (W.D.N.Y. May 24, 2012) ("[E]ven in the event that tainted evidence is presented to a grand jury, 'this would not be a basis for abating the prosecution pending a new indictment, let alone barring it altogether.'" (citation omitted)).

**B. Motion to Suppress**

On May 22, 2008, federal agents obtained a search warrant for Defendant's residence located at 1958 Kirby Road, McLean, Virginia. (Def. Ex. S-1 "Warrant".) In brief, it authorized federal agents to search Defendant's personal records for evidence that he was not working for the company that sponsored his green card. It permitted agents to seize, among other things:

> Any and all records identifying or tending to identify the true name and/or aliases used by MAHMOOD AHMAD, as well as any means of timing of travel by AHMAD, including, but not limited to, photographs, passports, travel records including itineraries and receipt stubs, Social Security cards, driver's licenses, immigration records, insurance records, resumes, business records, financial institution records including credit card statements and/or credit cards, tax records, identification documents issued by any foreign government, and/or records pertaining to birth, marriage, divorce, and/or death.
>
> . . .
>
> All business and personal documents necessary to compute MAHMOOD AHMAD's correct taxable income, and all business and personal documents that were used for the preparation or documentation of this personal income tax returns, business tax returns and the corporate tax returns filed for the years 2002 to present.

(Warrant, Aff., Attach B.) The warrant was executed on May 28, 2008.

5

Defendant has now moved to suppress all evidence found during this search on grounds that: "(i) the search warrant affidavit did not establish probable cause to search for certain records relating to aliases, travel, financial activity, business activity and taxes; and, (ii) the search warrant was so overly broad it was invalid on its face." (Mot. to Suppress at 1.)  Each argument is addressed in turn.

### 1. Probable Cause

Generally speaking, the Fourth Amendment requires that all searches and seizures be supported by a warrant based on probable cause.  *See Katz v. United States,* 389 U.S. 347, 357 (1967).  Probable cause "is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules."  *Illinois v. Gates,* 462 U.S. 213, 232 (1983).  Probable cause determinations are based on the "totality of the circumstances" of each case.  *Maryland v. Pringle,* 540 U.S. 366, 371 (2003).  Probable cause is found "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found."  *Ornelas v. United States,* 517 U.S. 690, 696 (1996).

A court reviewing a magistrate's determination of probable cause does not assess the existence of probable cause

*de novo*.  Instead, the court's task is to ascertain whether the magistrate had a substantial basis for concluding that probable cause existed.  *Gates,* 462 U.S. at 238–39.  In doing so, courts are to give the magistrate's determination "great deference." *Id.* at 236.  In addition, courts should not invalidate warrants by interpreting affidavits in a "hypertechnical, rather than a commonsense, manner."  *Id.; see also United States v. Gary,* 420 F. Supp. 2d 470, 476 (E.D. Va. 2006).  To assess a magistrate's finding of probable cause, a reviewing court may look only at the evidence provided to the magistrate, as well as any reasonable inferences that may be drawn therefrom.  *Gates,* 462 U.S. at 235.

      The affidavit submitted in support of the warrant in this case contains sufficient facts to support a finding of probable cause as to the records now in dispute.  The magistrate was told that Defendant acquired a green card based upon a fictitious job.  (Warrant, Aff. at 3-6.)  Accordingly, it was perfectly acceptable to permit law enforcement to search Defendant's financial records to determine the source of his income, including any aliases he may have used to help conceal such information.  The affidavit also alleged that Defendant used fraudulent employment documents "and related fraudulent immigration documents to enter, exit and live in the United States."  (Warrant, Aff. at 13.)  Again, given this information,

7

it was reasonable to permit the seizure of records relating to Defendant's travel.  In sum, the magistrate made a commonsense determination that the documents sought had a sufficient relationship to the crimes charged to permit the search.

Defendant cites *United States v. Doyle,* 650 F.3d 460 (4th Cir. 2011), in support of his argument that the warrant lacked probable cause to search for records relating to aliases, travel, financial activity, business activity and taxes.  In *Doyle*, the Fourth Circuit concluded that the warrant at issue lacked sufficient probable cause because the supporting affidavit established probable cause for one crime (child molestation) but designed and requested a search for evidence of an entirely different crime (child pornography).  650 F.3d at 472.  *Doyle*, however, is plainly distinguishable.  Unlike in *Doyle*, the warrant in this case is not seeking evidence in support of an entirely different offense; instead, the documents sought have a clear nexus to the crimes charged.  Defendant's argument that his "taxes, financial records, and business records [have] nothing to do with the green card investigation" is unpersuasive.  (Mot. to Suppress at 6.)  These records "are appropriate items to seize where the crime involves the fraudulent claim of employment," as "[l]aw enforcement is entitled to evidence of [Defendant's] declared earnings and cash

8

flow to demonstrate the fraudulent nature of [his claimed] job." (Gov't Opp'n to Mot. to Suppress [Dkt. 37] at 3.)

In any event, even if the warrant lacked probable cause to support the specific categories identified by Defendant, the resulting search was permissible under the good faith exception established in *United States v. Leon,* 468 U.S. 897, 913 (1984). Pursuant to the good faith exception, a court should not suppress the fruits of a search conducted under authority of a search warrant unless "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon,* 468 U.S. at 922 n.23. The Supreme Court has identified four situations in which an officer's reliance on a search warrant would not be objectively reasonable:

> (1) the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth;
>
> (2) the magistrate wholly abandoned his detached and neutral judicial role;
>
> (3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
>
> (4) the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid.

*United States v. Hyppolite,* 65 F.3d 1151, 1156 (4th Cir. 1995) (quoting *Leon,* 468 U.S. at 923).

None of the above circumstances exist in this case. Defendant does not claim, nor does the evidence suggest, that the magistrate was misled by information in the affidavit. Defendant does argue, however, that the magistrate wholly abandoned her detached and neutral role in this case. To fit within this exemption, Defendant must show that the affiant officer could not have reasonably relied on the magistrate's probable cause determination because the officer knew that the magistrate "wholly abandoned his detached and neutral judicial role," or acted and as "an adjunct law enforcement officer." *Leon,* 468 U.S. at 914, 923 (citation omitted). This second factor applies in situations where the magistrate "overstep[s] his judicial responsibilities and compromise[s] his judicial neutrality" by, for example, "serv[ing] as the leader of a search party" or functioning as a "rubber stamp for the police." *United States v. Servance,* 394 F.3d 222, 231 (4th Cir. 2005) (citations omitted), *rev'd on other grounds,* 544 U.S. 1047 (2005).

Although the Fourth Circuit has rarely addressed this exemption, it is generally true that a so-called "rubber stamp" showing requires more than merely demonstrating that the

affidavit failed to establish probable cause, which is all Defendant has argued here. *See, e.g, United States v. Martin,* 297 F.3d 1308, 1318 (11th Cir. 2002) ("Just because the affidavit is later found to be lacking in probable cause does not mean the magistrate served as a mere rubber stamp." (citation omitted)). Where the magistrate takes time to read the affidavit or requires additional details in the affidavit before signing it, the second exemption does not apply. *See Sevrance,* 394. F.3d at 231-32. Here, Defendant has produced no evidence outside of conclusory allegations that the magistrate did not read the affidavit or that she read it so cursorily as to have wholly abandoned her neutral and detached role. Moreover, there is nothing in the record to suggest that the magistrate acted in a partisan manner or aligned herself with the police. Accordingly, the second exemption is inapplicable.

Defendant's argument as to the third exemption is similarly meritless. As the Government aptly summarized:

> The affidavit was supported by information from the Department of Homeland Security showing Ahmad's inconsistent applications for a permanent resident card in 2002 and naturalization in 2007; from Paychex, a third-party payroll company that provided services for [BLS], the limousine company that fraudulently sponsored Ahmad's work visa; from three confidential witnesses who worked at [BLS] during the relevant time period but never saw Ahmad work there; from the bookkeeper at [BLS] who admitted that Ahmad never worked there; from another

11

> employee of [BLS] who said Ahmad never worked there; from the owner of [BLS] who admitted to fraudulently endorsing Ahmad's permanent resident application, [and] the lack of any reported wages with both the Virginia Employment Commission and the District of Columbia Employment Commission for Ahmad[.]

(Gov't Opp'n to Mot. to Suppress at 2-3.) Given this evidence, the undersigned cannot conclude, as Defendant suggests, that the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Lastly, Defendant's argument that the warrant was facially deficient by failing to particularize the places to be searched or the things to be seized is without any support given the detailed affidavit presented to the judicial officer. *See, e.g., Doyle,* 650 F.3d at 467 ("Usually, a warrant issued by a magistrate suffices to establish that a law enforcement officer has acted in good faith in conducting the search."); *United States v. Atwell,* 289 F. Supp. 2d 629, 638 (W.D. Pa. 2003) ("Typically, 'the mere existence of a warrant . . . suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception.'" (citation omitted)).

### 2. Breadth of the Warrant

Defendant also moves to suppress all of the evidence arising out of the execution of the search warrant because, he

argues, the search warrant was overly broad.  (Mot to Suppress at 1.)  The Court disagrees.

The Fourth Amendment requires that a search warrant describe the things to be seized with sufficient particularity to prevent a "general, exploratory rummaging." *Coolidge v. New Hampshire,* 403 U.S. 443, 467 (1971).  "This requirement ensures that the search is confined in scope to particularly described evidence relating to a specific crime for which there is probable cause." *United States v. Oloyede,* 982 F.2d 133, 138 (4th Cir. 1992) (citation omitted).  It requires only reasonable specificity based on commonsense and a realistic assessment. *United States v. Srivastava,* 540 F.3d 277, 287 (4th Cir. 2008).  Additionally, the test is a pragmatic one: "The degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved." *United States v. Torch,* 609 F.2d 1088, 1090 (4th Cir. 1979) (citations and internal quotation marks omitted).

With this standard in mind, the Court agrees with the Government that the warrant in this case was sufficiently particular.  Although the warrant contains language authorizing the police to seize "any and all records," this language was limited in several ways, including directing officers to search for specific financial records and documents.  (*See* Warrant,

13

Aff., Attach B.) The circumstances of the search and the nature of the things to be seized also served to limit the discretion of the officers who conducted the search. Under these circumstances, the warrant "falls within the practical margin of flexibility." *Torch,* 609 F.2d at 1089; *see also Oloyede,* 982 F.2d at 139; *Ark. Chronicle v. Murphy,* 183 F. App'x 300, 306 (4th Cir. 2006). In any event, even if the search warrant was overly broad, suppression of the items seized is not justified because, as discussed above, "the officers executing the search warrant acted in objectively reasonable good faith when they relied on the validity of the search warrant." *Atwell,* 289 F. Supp. 2d at 629.

### III. Conclusion

The Court's rulings of July 10, 2014, were consistent with and based upon the foregoing.

|  |  |
|---|---|
| July 15, 2014<br>Alexandria, Virginia | /s/<br>James C. Cacheris<br>UNITED STATES DISTRICT COURT JUDGE |